WELLINGTON F. SCOTT & others *vs.* BOARD OF ELECTION
COMMISSIONERS OF NEWTON
(and a companion case[1]).

Middlesex.    October 14, 1963. — October 18, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* Water supply, Fluoridation.    *Water.*

Ascertainment of the will of the voters of a city on the question of dis-
continuance of fluoridation of its domestic water supply pursuant to
G. L. c. 40, § 41C, inserted by St. 1962, c. 485, § 1, was not precluded
by the fact that at the time of collection of signatures on a petition
under § 41C and the filing of the petition the water supply had not
actually been fluoridated, where, before the time of the vote on the
question, the water supply actually would be fluoridated pursuant to
previous action of the voters and city officers.

PETITIONS filed in the Superior Court on September 24,
1963, and September 11, 1963, respectively.

The cases were heard by *Vallely,* J.

The cases were submitted on briefs.

*Frederick G. Fisher, Jr.* (*S. Donald Gonson* with him),
for the petitioners.

*Matt B. Jones* for the respondent.

WILKINS, C.J.    These two cases are directed against the
ascertainment of the will of the voters of the city of New-
ton as to the discontinuance of fluoridation of the public
water supply for domestic use.    The first case is a petition
for a writ of mandamus by five citizens and residents of the
city to command the respondent board of election commis-
sioners to refrain from placing upon the ballot at a munici-
pal election to be held on November 5, 1963, the question
prescribed by G. L. c. 40, § 41C, inserted by St. 1962, c. 485,

---

[1] The companion case is by Harold M. Band and others against the same
respondent.

§ 1.[2]   The second case is a petition by not less than ten taxable inhabitants of the city to restrain the respondent board from incurring any obligations or expending any moneys for checking or certifying the signatures on a petition of registered voters seeking to have the question placed upon the official ballot, from printing the question on the ballot, from giving notice of the question to the voters, and from paying for the counting of the votes.   G. L. (Ter. Ed.) c. 40, § 53.

The cases were heard upon similar statements of agreed facts meeting the requirements of a case stated.   The judge decided in favor of the respondent board.   In the first case the judge entered an "order for final judgment," which provided "that final judgment be entered for the respondents dismissing the petition without costs and with prejudice."   The petitioners appealed.   In the second case a "final decree" was entered in which the judge stated, "I find and declare that the respondents, as members of the Board of Election Commissioners of the City of Newton, have acted in accordance with G. L. c. 40, § 41C, in preparing to place upon the ballot at the next municipal election the question set out in said section."   The petitioners filed a claim of appeal "from the final decree dismissing the petition."

In November, 1961, at a municipal election a majority of the voters of Newton voted in the affirmative on the question, "Shall the public water supply for domestic use in this city be fluoridated?"   Thereafter the board of aldermen appropriated about $180,000, and installation of equipment commenced in February, 1963.   Because of unavoidable delays the installation did not become complete and

[2] § 41C.   "Upon petition of five per cent of the registered voters of a city . . . in which the public water supply for domestic use is being fluoridated by such city . . . the following question shall be placed upon the official ballot to be used at the next regular municipal election . . . : — 'Shall the fluoridation of the public water supply for domestic use in (this city) . . . be discontinued?' . . .   If a majority of the votes in answer to said question is in the affirmative, it shall be deemed and taken to be the will of the voters . . . that fluoridation of the public water supply for domestic use shall be discontinued, and if a majority of said votes is in the negative, it shall be deemed and taken to be the will of said voters that such supply shall continue to be fluoridated."

none of the public water supply actually contained fluorine until September 12, 1963, on which date the water from one of the three pumping stations of the city contained fluorine. The water commissioner stated that the water supply for the entire city would contain fluorine by October 1. The respondent board determined that September 10 should be the last day for filing petitions to place upon the official ballot to be used at the election on November 5 the question, "Shall the fluoridation of the public water supply for domestic use in this city be discontinued?" Between August 30 and September 10 petitions purporting to be signed by approximately 5,000 voters were filed with the respondent board, which by September 10 had certified as correct approximately 2,800, which is more than five per cent of the registered voters plus one fifth thereof. The last practicable date for arranging for printing ballots was October 5.

Accordingly, the question will be on the ballot. At most, the only relief now open would be to enjoin the count and tabulation of the votes.

The core of the argument of the petitioners is that the authorization for the vote upon a petition by registered voters is limited to a city "in which the public water supply for domestic use is being fluoridated by such city." G. L. c. 40, § 41C. It is argued that when the signatures were obtained, which was not later than September 10, there was no actual fluoridation. That the fluoridation must be taken to have been completed by October 1, more than a month before the election, is said to be unimportant. We are unable to perceive in the language of the act the legislative intent contended for. We think that the right to seek an expression of the will of the voters has not been limited to a situation where there had been at least one day's fluoridation when the signatures were collected or the petitions filed.

The petitioners refer to St. 1962, c. 485, § 2, which provides that G. L. c. 40, § 41B, inserted by § 1 of c. 485, "shall not be construed to prohibit the fluoridation of a public water supply for domestic use by a city . . . in which, upon

the effective date of this act, such water supply is being fluoridated or in which, in accordance with the provisions of section forty-one B of chapter forty of the General Laws, as in effect prior to said effective date, it has been voted to fluoridate such supply.'' We do not observe an intent to draw a fundamental distinction between "water supply is being fluoridated" and "it has been voted to fluoridate such supply.'' There surely is no distinction of significant application to the question before us.

For whatever it may be worth, it may be noted that the ascertainment of the will of the voters is informative only. The actual determination whether there shall be fluoridation is in the sole power of the appropriate municipal officers. What heed they might give to a purely advisory vote is beside the point.

This is the opinion of a majority of the court.

The rulings of the court below were correct. In the first case judgment is to be entered dismissing the petition. In the second case the decree is affirmed.

*So ordered.*